May it please the Court, Justices, Attorney Michael Cristale appearing on behalf of Mr. Jason Kellow. May I proceed? Please. Thank you, Justices. There are a number of issues we raised on direct appeal as it relates to enhancements with regard to Mr. Kellow's sentence. Specifically, the first is sophisticated means and whether or not the Court should have adjusted upward for sophisticated means. And as it relates to, for example, the Valdez case where the Court reversed finding that there was not adequate findings that, for example, there wasn't a fictitious entities, no shell companies, the corporate layers weren't complex in that it demonstrated the defendant was trying to hide the transactions. And pursuant to Valdez, especially where it indicates that there is an intricate offense conduct pertaining to the execution or concealment of the offense, here we don't have that. First of all, we have three transactions that we're dealing with as it relates to how Mr. Kellow was convicted. We have the Kill Drummy property, the Claremont property, and ultimately the Happy Sparrow property. Two of the three, Mr. Kellow was merely the seller. The other property, the Kill Drummy property, Mr. Kellow didn't even have really any involvement. What he did was he did it. Kennedy. We don't require much for sophistication under our case. So this is, right? How do you deal with Jennings? Yeah. And I don't think even if, even in light of Jennings, I don't think you have enough in this case, whereas you don't even have, for example, you have two transactions. Jennings was use of a fake bank account? Yes. Which doesn't seem very sophisticated to me. No, but in this case, you don't even have that. Even I could do that. Correct, Justice. In this case, you don't even have that. No, I mean, you know, you just go and open a bank account. It doesn't take much sophistication. Right. And I think you have less here. And if you look at Valdez, where they reversed. How can you have less sophistication than opening a bank account? Well, if you look at Valdez, Valdez required certainly more or higher standard in order to find a sophisticated means associated with the transaction. Here, you have a $10,000 transaction that was given directly to Mr. Essex, and then you have a $50,000 payment that was given directly to Mr. Kello's brother, Jason Kello, who was determined to be the more sophisticated person. Valdez is from the Fifth Circuit, whereas Jennings is from the Ninth Circuit. I understand, Justice. So if there is a conflict between the two, we, of course, have to follow the Ninth Circuit, right? It is binding precedent in the Court, obviously. But in this particular transaction, I'm not quite sure how you even have a finding of sophisticated means of any sort. You just don't have any real transaction which is intricate or tries to conceal the transaction. How much time did this cost your client? Well, it's a two-level adjustment. I have no feel for what that means. Yes. I don't know the specific amount of months that the two levels would have saved him. The reason I ask is that sometimes if an enhancement results in a huge increase in the sentence, those sentences require findings that are more detailed or — Well, he was a — it was, I think, his — I can't remember, and I apologize. I'd have to revisit the sentencing guidelines. But I believe his ultimate sentence was 57 months, I think, if you — in comparison to his brother, who didn't receive sophisticated means, didn't receive abusive trust, and he was the mastermind as the testimony came through, even though he did take a plea negotiation in this case, his base offense level was 33 in comparison to my client, Mr. Lance Kello, whose sentence was 57 months. So sophisticated means, abusive trust, certainly those enhancements did significantly increase Mr. Kello's guideline range. And then just getting into the abusive trust issue as an additional enhancement that we raise on direct appeal, if you look at abusive trust, as the Court understands, it requires an abusive position of trust in a way that significantly facilitated the commission or concealment of the offense. We don't have that in this case. Mr. Kello did not use his position as a mortgage broker in AMF or as an officer in AMF to facilitate the fraud. You're dealing with three transactions. As I indicated, two of the three, he was the seller. The third, he was a passive participant in that he received $28,000 back on the transaction for assisting his brother in resolving some gambling debts. So he doesn't have any role whatsoever with regard to being a mortgage broker, a loan officer, using his position in AMF, the mortgage company, in any of the three transactions that he was convicted of. And so as a result of that, that particular two-level adjustment should not be applied to Mr. Kello. So now, if you're looking at sufficient ---- Kennedy, but the argument sounds a lot like you're telling us your client was innocent. No. I'm telling you that the three transactions that he was convicted for ---- He didn't have a role in this. He didn't have a role in that. But the jury found otherwise. They found that ---- So why should we accept your client's characterization of what happened? They found that he had a role in the conspiracy. And then ultimately, they found that he had ---- he was convicted of the three counts, which was the three properties that I'm identifying, for which there is absolutely no testimony whatsoever to suggest that he utilized his position in ---- within the company in any of those transactions. I think that's material. I think that there has to be ---- the government has to demonstrate some materiality in terms of the evidence in the transcripts to justify that there is an abuse-of-trust enhancement. If he didn't use his position in that company to further the fraud, then that application cannot be applied, just as the sophisticated means application shouldn't be applied, because he didn't use multiple corporations or he didn't use ---- he didn't layer the transaction to cover up or to hide the fraud. This was very transparent. And so in light of that, you have three of the defendants, two of which took plea negotiations, all of which were brothers, by the way, all of which had involvement in this company, but the one brother who went to trial and ultimately was convicted received 57 months. The other brother took a plea negotiation who was, throughout the course of the trial and the testimony, suggested that he was the mastermind behind this conspiracy and this fraud. That individual received 33 months. The other brother, Vincent Kello, received 7 months. And what's the difference between them? The difference between the ---- What's the obvious difference between your client and the others? My client went to trial and was convicted, didn't get the benefit of the acceptance or responsibility, but the mere fact that he went to trial doesn't necessarily mean that he should be treated in a disparate ---- with such disproportionality that doesn't equalize the sentence. Two points for acceptance or responsibility, right? Three, I believe they received. Oh, they got the three points. I believe they did. Basketball, right? So how much are three points worth? Well, the three ---- that's the ---- I mean, that is a considerable reduction in the sentence. As I ---- Why, if you discount your client's sentence by the three points, I mean, they accepted he didn't, so they got him fair and square on that one, doesn't the sentence come out more or less the same? Well, I would say that the three levels they are entitled to as a result of acceptance of the plea. But you say there's some disparity. He somehow got a lot more than his brothers, but his brothers accept responsibility and they get the benefit of that acceptance. And you can't argue about that. No, but I cannot. If you add back the three points to them, doesn't their sentence come out to be about equivalent to your client's? No, no. It's still significantly less because you have to ---- Well, how significant can it be? You're already 33 to 57. Well, one of them only received seven months. And there's an argument to be made that that seven ---- that that individual was as culpable as Mr. Lance Kello in this. I mean, you're talking about two levels. Let's take the one that got 33 months. How much would his sentence be without the three points? Well, I mean, I would assume it's, you know, several months. I mean, probably an additional ---- I can't guess. I don't want to speculate, Justice, as to exactly how many months that would be. I'd have to revisit the guidelines and do the calculation. I apologize for not having that. I think you know exactly, but you don't want to say. No, sir, I don't. I would give that to you. I would give that to you. I do not know that. I apologize. I mean, one other point I'd like to make with regard to the forfeiture issue as it relates to this case. We went in there. In the second superseding indictment, the government specifically alleged an amount of $1.3 million. We went in there. We contested that amount because we don't believe the government proved it up. The next day we went in to have an argument on forfeiture, and they increased it to $2.7 million without any real justification as to why that amount was increased. And you're dealing with a situation where the two other co-defendants had considerably less forfeiture amounts. I think Mr. Jason Kellow, the mastermind, had $700,000 in forfeiture. The other defendant had a hundred and something thousand dollars in forfeiture. My client was imposed a $2.77 million forfeiture. We believe that that is inappropriate. Thank you. I think it won't start moving until you start speaking. May it please the Court. Peter Levitt for the United States, Your Honor. Just to make plain several factors. First of all, in the Jennings opinion, the Court emphasized that the for sophisticated means, it need not involve highly complicated schemes or exhibit exceptional brilliance. And as the district court correctly noted, and as I believe Judge Clifton, who authored the Jennings opinion, correctly observed, the brilliant Jennings opinion is known in these parts. Suddenly it's shooting up the charts. I have no memory of it at all. I didn't even notice when I read it. I will respectfully refrain from a characterization, Your Honor. But it But, you know, Judge Clifton says it's so true. Very often we each have cases cited to us. Can't remember. Oh, it must be that judge must surely have a stake in this opinion. We don't remember. I'll concur in that. 2013. It wasn't that long ago either. Anyway, is there anything in your brief that you think, anything you heard today that you don't think is adequately covered in your brief? No, Your Honor. I believe that the brief does make plain all of the government's positions. I would like to ask you about one thing, which is the forfeiture amount. Yes, Your Honor. I mean, there was a different number, and suddenly the number got higher. Why shouldn't the government be limited to what it pled? Well, there are several reasons, Your Honor. First of all, the rule itself doesn't specify any number be alleged in a forfeiture allegation in an indictment. The government gratuitously put one in here in this case, and admittedly, it does not contain the approximately or the modifying language, such as at least this number. And ---- Was there evidence at the trial about the value of the properties? Certainly. It totaled $2.76 million. And was that ñ was there any dispute about that at the trial? None whatsoever. In the government's motion for final order of forfeiture, which was filed two days before the sentencing hearing, and which set forth the $2.76 million figure, those numbers for the undisputed amounts of the loans, as evidenced by the trial exhibits, showed $2.76 million for the two Happy Sparrow deals, the Kildrummy deal and the Claremont deal. Was there any request that the jury make a finding of the amount that was in ñ of the value of the properties? I don't believe such a request was made, Your Honor. But there's evidence in the record of the value. Certainly. And the district court so found, without objection at the sentencing hearing, that I believe it was Exhibit 1A, 2A, 5A, 7A, or 7G and 22G, totaled $2.76 million. But your position is that the amount specified in the indictment is not a limit. Yes, Your Honor. That is a correct characterization. I mean, you could not account. You couldn't say, you know, the evidence at trial showed that he, in fact, also committed bank robbery. And so we're now going to convict him of that, right? That's correct. We could not do that. Why is the forfeiture amount any different, at least unless it contains some modifying phrase like at least or in excess of or approximately, you know, something like that? I think the answer to Your Honor's question is because of the unique structure of Rule 32.2, and particularly in Rule 32.2b2b, where I don't have it in front of me. I have it on my desk. Your desk is not that far away. I always love to see a lawyer grabbing paper rather than fooling with a computer trying to figure it. In 32.2b2b, the rule states, unless doing so impractical, the court must enter the preliminary order sufficiently advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final. And I think, therefore, built into the structure of the forfeiture scheme is the recognition that there is a preliminary phase, the preliminary order of forfeiture, and before that the allegations in the indictment. And then there's the point at which the forfeiture unit of every U.S. attorney's and has to put the defendant, as they did here, on notice that the higher amount was going to be sought. Well, it's also a note, you know, you put it in the indictment and you put the other you put the defendant on notice about what the amount is going to be, they can contest it if they want. That's correct. Right? I mean, it's just like a trial – it can be a trial issue. That's correct. And so here you put in the you put in the indictment 1.3 million or whatever it was, and they didn't dispute that. No, Your Honor. And oftentimes, in this case, the defendant's – But if you put in 2.4? 2.76. They might have disputed that. In this case, the defendant's custodial sentence went first, and then the forfeiture sentencing, as it were, took place later. And sometimes these forfeiture sentencings turn into de facto trials. Right. They did not hear, because there was no dispute about the propriety of the numbers. Okay. Thank you. Thank you, Your Honor. The case is argued and stands submitted.
judges: Kozinski, Paez, Clifton